Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JULISA PAREDES OLIVERAS, JOSÉ SOTO RODRÍGUEZ Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>V.<br><br>NEOMED CENTER, INC., CARMEN RIVERA, AIG INSURANCE COMPANY PUERTO RICO ET AL.<br><br>Peticionarios | KLCE202401371 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2021CV01151<br><br>Sobre: Despido injustificado; Daños y perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, Juez Marrero Guerrero y Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de agosto de 2025.

Comparecen ante nos Neomed Center, Inc. ("Neomed"), Carmen Rivera ("enfermera Rivera") y AIG Insurance Company de Puerto Rico ("aseguradora AIG"), en adelante, "peticionarios-demandados", por conducto de su representación legal y nos solicitan que revoquemos la *Resolución* emitida el 20 de noviembre de 2024 por el Tribunal de Primera Instancia,[1] Sala Superior de Caguas ("TPI").[2] En el referido dictamen, el TPI denegó las respectivas solicitudes de sentencia sumaria presentadas por Neomed, por AIG y por la Dra. Julissa Paredes Oliveras ("doctora Paredes Oliveras" o "recurrida-demandante") y ordenó la continuación de los procedimientos.

---

[1] Notificada el 21 de noviembre de 2024.
[2] Apéndice de *Petición de certiorari*, Anejo 29, págs. 2003-2020.

Número Identificador
SEN2025_____

Por los fundamentos que expondremos a continuación, expedimos el auto de certiorari, revocamos parcialmente la *Resolución* recurrida y ordenamos la continuación de los procedimientos.

**I.**

El caso ante nuestra consideración se originó cuando la Dra. Paredes Oliveras, su esposo el Sr. José Soto Rodríguez ("señor Soto Rodríguez") y la Sociedad Legal de gananciales compuesta por ambos presentaron, el 14 de mayo de 2021,[3] una *Demanda* contra Neomed, la enfermera Carmen Rivera -compañera de trabajo- y la aseguradora AIG.[4] En esta, alegaron que, el 5 de febrero de 2021, la doctora Paredes Oliveras fue despedida injustificadamente de su empleo en Neomed, y que, como consecuencia de ello, procedía el pago de la correspondiente mesada, ascendente a $67,500.00.

Señalaron, además, que los peticionarios eran responsables de las alegadas expresiones difamatorias hechas en el proceso de la investigación que culminó con el despido de la doctora Paredes Oliveras. En vista de lo anterior, la recurrida-demandante reclamó una suma no menor de $100,000.00 por concepto de angustias mentales, calumnias y daños a su reputación. De igual forma, el señor Soto Rodríguez reclamó $35,000.00 por los daños y angustias mentales sufridos como consecuencia del despido injustificado de su esposa.

Así pues, el 8 de julio de 2021, Neomed y la enfermera Rivera presentaron su *Contestación a demanda*.[5] En esencia, negaron que el despido de la doctora Paredes Oliveras fuese uno injustificado. Explicaron que este se debió a la conducta inmoral, discriminatoria, incorrecta y en contra de la política de Neomed que proyectó la

---

[3] Apéndice de *Petición de certiorari*, Anejo 1, págs. 1-7.
[4] El 7 de septiembre de 2023 la demanda fue enmendada a los fines de añadir como demandado a la aseguradora AIG. Véase, Apéndice de *Petición de certiorari*, Anejo 11, págs. 122-129.
[5] Apéndice de *Petición de certiorari*, Anejo 2, págs. 8-29.

recurrida-demandante. En específico, los peticionarios hicieron referencia a lo consignado en la carta de despido, a los efectos de que el mismo se debía a:

> *a. Que la Dra. Paredes, delante de todos y en un tono de voz alto, le gritó a la enfermera Carmen Rivera que si ella estaba sorda que se pusiera los audífonos.*
>
> *b. Que la Dra. Paredes incurrió en una falta de respeto crasa hacia una compañera de trabajo en presencia de otros empleados y/o pacientes.*
>
> *c. Que por razón de las expresiones de la Dra. Paredes, la Sra. Carmen Rivera se ofendió, se sintió humillada y discriminada, por lo que se concluyó que la Dra. Paredes le alteró la paz a la Sra. Carmen Rivera.*
>
> *d. Que las expresiones de la Dra. Paredes constituyeron un grave acto discriminatorio en contra de la Sra. Carmen Rivera, quien como muy bien conocía la Dra. Paredes, tiene sus condiciones de salud, incluyendo problemas de audición.*
>
> *e. Que las expresiones de la Dra. Paredes pueden constituir una violación a la privacidad de la Sra. Carmen Rivera.*
>
> *f. Que las acciones de la Dra. Paredes pueden constituir un acto de hostigamiento laboral en contra de la Sra. Carmen Rivera.[6]*
>
> *g. De hecho, de las entrevistas realizadas como parte de la investigación se pudo corroborar que esas expresiones no fueron la primera vez que usted le faltó el respeto a la Sra. Carmen Rivera.*
>
> *h. Incluso, de las declaraciones de las empleadas entrevistadas advenimos en conocimiento de que usted ha tenido múltiples situaciones con las enfermeras del Departamento de Pediatría, con su compañera doctora pediatría e incluso con pacientes que por su actitud han manifestado no querer atenderse con usted.*
>
> *i. Se corroboró que usted, con sus actitudes y expresiones, crea un ambiente tenso en el Departamento de Pediatría.*
>
> *j. Cabe destacar que en su entrevista, usted tuvo la oportunidad de decir la verdad de lo sucedido, pero usted negó haber hecho las expresiones a la Sra. Carmen Rivera. Sin embargo, de todos los testimonios de los testigos presentes, se pudo corroborar que en efecto, usted hizo tales expresiones hacia la Sra. Carmen Rivera.*
>
> *k. Siendo así, además de las faltas antes mencionadas, usted incurrió en otra falta grave al mentir en su entrevista y negar el evento.[7]*

Dado lo anterior, los peticionarios plantearon que, por tratarse de un despido justificado, no procedía el pago de la mesada reclamado por la doctora Paredes Oliveras, así como tampoco

---

[6] *Íd.* Anejo 2, págs. 20-21; Anejo 16, págs. 580-584.
[7] Anejo 16, págs. 580-584.

procedían las reclamaciones de angustias mentales instadas por ésta y su esposo, el señor Soto Rodríguez, por lo que solicitaron que se desestimara la demanda.

Posteriormente, los recurridos presentaron, el 13 de septiembre de 2021, una *Demanda enmendada* en la cual señalaron que los peticionarios incurrieron en negligencia crasa al utilizar el nombre de la doctora Paredes Oliveras para propósitos comerciales.[8] Esto, debido a que se mantuvo publicidad con el nombre de la doctora Paredes Oliveras como proveedora de servicios en Neomed posterior a su despido. Razón por la cual, al amparo de la *Ley del Derecho sobre la Propia Imagen* del 13 de julio de 2011 (Ley Núm. 139-2011), según enmendada, 32 LPRA sec. 3151, solicitaron una partida de daños estatutarios ascendentes a $100,000.00.

En respuesta a lo anterior, el 20 de septiembre de 2021, los peticionarios presentaron su *Contestación a demanda enmendada*.[9] En síntesis, alegaron que no eran responsables bajo la *Ley del Derecho sobre la Propia Imagen, supra*, ya que, al contratar los servicios profesionales de la recurrida-demandante, obtuvieron el consentimiento requerido por ley. De modo que, solicitaron se declarara sin lugar la demanda enmendada.

Más adelante, el 24 de septiembre de 2021, Neomed y la enfermera Rivera presentaron una *Contestación enmendada a demanda enmendada bajo la Regla 13.1 de las de Procedimiento Civil*.[10] En esta plantearon que la doctora Paredes Oliveras había firmado, el 17 de mayo de 2018, un documento titulado "*Relevo del Empleado para Neomed TV*" en el cual autorizaba a Neomed a utilizar su nombre, imagen, material biográfico u otra información relevante a su persona para promocionar cualquier proyecto grabado o

---

[8] Apéndice de *Petición de certiorari*, Anejo 4, págs. 31-37.
[9] Apéndice de *Petición de certiorari*, Anejo 5, págs. 38-59.
[10] Apéndice de *Petición de certiorari*, Anejo 7, págs. 62-84.

fotografiado. Con relación a la duración del relevo, aclararon que nada se dispuso en cuanto a que la autorización cesaría al terminar la relación de empleo con Neomed. Sin embargo, alegaron que se encontraban haciendo gestiones para eliminar la publicidad en la que aparecía la doctora Paredes Oliveras.

Eventualmente, el 9 de diciembre de 2021, AIG presentó su *Contestación a demanda enmendada.*[11] En esta, adoptó -en su mayoría- la *Contestación a demanda enmendada* y la *Contestación enmendada a demanda enmendada.* En lo pertinente, admitió que emitió una póliza de seguro en la cual Neomed figuraba como asegurada, sujeto a ciertos términos y condiciones.

Luego de varios trámites procesales, el 7 de septiembre de 2023, los recurridos presentaron una *Segunda Demanda Enmendada.*[12] Alegaron que, hasta el 8 de febrero de 2023, Neomed utilizó de forma ininterrumpida la imagen y nombre de la doctora Paredes Oliveras. Además, señalaron que dicha imagen se mantuvo en una campaña publicitaria en el Periódico Regional de Trujillo Alto hasta el mes de julio 2023. En cuanto al despido de la doctora Paredes Oliveras añadieron que, este fue injustificado, pues conforme a la *Ley Sobre Despidos Injustificados* del 30 de mayo de 1976 (Ley Núm. 80-1976), según enmendada, 29 LPRA sec. 185, era requerido que previo al mismo se agotaran los remedios dispuestos en cuanto a disciplina progresiva.[13]

Así las cosas, el 18 de septiembre de 2023,[14] Neomed y la enfermera Rivera presentaron su *Contestación a segunda demanda enmendada.*[15] En resumidas cuentas, admitieron la publicación del anuncio con el nombre de la doctora Paredes Oliveras. Sin embargo,

---

[11] Apéndice de *Petición de certiorari*, Anejo 8, págs. 85-103.
[12] Apéndice de *Petición de certiorari*, Anejo 11, págs. 122-129.
[13] *Íd.* Anejo 11, pág. 126.
[14] El 20 de septiembre de 2023 los peticionarios presentaron su *Contestación enmendada a segunda demanda enmendada.* La misma fue para corregir una alegación y su numeración.
[15] Apéndice de *Petición de certiorari*, Anejo 12, págs. 130-154.

adujeron que ello se debió a que obtuvieron el consentimiento de ésta y a que los anuncios se trataban de un arte publicitario preparado mientras la doctora Paredes Oliveras trabajaba para Neomed.

Asimismo, señalaron que los recurridos carecían de legitimación activa para reclamar al amparo de la *Ley de Propia Imagen, supra*, y que "Neomed carece de legitimación pasiva por ser una corporación sin fines de lucro y [porque] al publicar el anuncio no [tuvo] la intención de recibir un beneficio económico."[16]

En relación con las alegaciones de despido injustificado, los peticionarios expusieron que, "la conducta que asumió la Dra. Paredes creó un entorno de trabajo intimidante, humillante, hostil u ofensivo no apto para que una persona razonable pudiera ejecutar sus funciones o tareas de forma normal."[17] Por lo que, dado al alegado acto discriminatorio y de acoso laboral, así como para evitar incurrir en responsabilidad al amparo de la *Ley Para Prohibir y Prevenir el Acoso Laboral en Puerto Rico* del 7 de agosto de 2020 (Ley Núm. 90-2020), según enmendada, 29 LPRA sec. 3111, Neomed "no tuvo otra alternativa que despedir a la Dra. Paredes Oliveras."[18]

En cuanto a la reclamación por difamación presentada por los recurridos, los peticionarios también argumentaron que no procedía. Primero, porque el alegado daño fue autoinfligido por la doctora Paredes Oliveras; y segundo, porque al no comunicar a terceras personas las razones del despido no se cumplió con el requisito de publicidad. Dado lo antes expuesto, solicitaron se declarara "Sin Lugar" la *Segunda Demanda Enmendada*.

Luego de ello, AIG presentó el 26 de septiembre de 2023, su *Contestación a segunda demanda enmendada*.[19] En la misma aclaró los alcances de la póliza de seguro a favor de Neomed. En síntesis,

---

[16] *Íd.* Anejo 12, págs. 135-136.
[17] *Íd.* Anejo 12, págs. 137.
[18] *Íd.* Anejo 12, págs. 136.
[19] Apéndice de *Petición de certiorari*, Anejo 15, págs. 182-194.

adujo que la póliza "no provee cubierta para reclamaciones por daños que surjan del presunto uso indebido, por Neomed, de la imagen de la demandante para usos comerciales y publicitarios bajo la *Ley del Derecho Sobre la Propia Imagen*", *supra*.[20] Así mismo, alegaron que "la póliza excluye las reclamaciones por daños emocionales y angustias mentales incoada por los demandantes [recurridos]."[21] En vista de lo anterior, solicitaron que se desestimara con perjuicio la *Demanda* y sus enmiendas.

Así las cosas, el 31 de octubre de 2023, Neomed y la enfermera Rivera presentaron una *Solicitud de Sentencia Sumaria* en la cual alegaron que no procedían las alegaciones sobre negligencia, difamación y derecho de imagen de la recurrida.[22] En lo pertinente, señalaron que la causa de acción por difamación era infundada debido a que las presuntas expresiones difamatorias eran comunicaciones privilegiadas, que no fueron publicadas.[23] Argumentaron que sin publicidad, no había daño alguno a la reputación de la doctora Paredes Oliveras y por consiguiente, era improcedente la acción de difamación.

Con relación a la reclamación por violación al derecho de imagen, los peticionarios aceptaron que posterior al despido de la recurrida-demandante publicaron anuncios con un arte que contenía la imagen de esta.[24] Sin embargo, reiteraron que ello se debió a la autorización escrita provista por la doctora Paredes Oliveras el 17 de mayo de 2018.[25] Además, argumentaron que la doctora Paredes Oliveras no tenía legitimación activa para reclamar al amparo de la *Ley del Derecho Sobre la Propia Imagen*, pues esta no se lucraba de la explotación de su imagen, antes, ni después de su despido.[26]

---

[20] *Íd.* Anejo 15, pág. 191.
[21] *Íd.*
[22] Apéndice de *Petición de certiorari*, Anejo 16, págs. 195-588.
[23] *Íd.* Anejo 16, pág. 249.
[24] *Íd.*
[25] *Íd.* Anejo 16, pág. 586.
[26] *Íd.* Anejo 16, pág. 250.

En síntesis, los peticionarios alegaron que el único remedio que la recurrida-demandante tenía disponible como resultado del supuesto despido injustificado, si se demostraba, era la mesada.[27] Por lo que, solicitaron al tribunal de instancia que dictara sentencia sumaria y desestimara la totalidad de la demanda.

De igual forma, el 6 de noviembre de 2023, AIG presentó una *Solicitud de sentencia sumaria parcial*.[28] En esta solicitó al foro de instancia que desestimara las causas de acción en contra de AIG en las cuales se reclamaban: (1) daños por angustias mentales; (2) daños a la reputación; (3) indemnización por el uso ilegal de la imagen de la doctora Paredes Oliveras. Lo anterior dado a que la póliza de seguro a favor de Neomed expresamente excluía de la cubierta dichas reclamaciones.

En desacuerdo con las solicitudes de sentencia sumaria presentada por Neomed, la enfermera Rivera y AIG, el 5 de diciembre de 2023, los recurridos presentaron *Oposición moción sentencia sumaria Neomed* y *Oposición moción sentencia sumaria parcial AIG*.[29]

En cuanto a la moción presentada por Neomed, los recurridos plantearon que las causas consignadas en la carta de despido no justificaban un despido, más bien una amonestación o una suspensión. Señalaron, además, que no les asistía la razón a los peticionarios en cuanto a la validez de la causa de acción de Derecho de Imagen. Enfatizaron que aun existían hechos en controversia, por lo que no procedía que se dictara sentencia sumaria.

En lo concerniente a la moción sometida por AIG, los recurridos adoptaron los argumentos sometidos en la *Oposición moción sentencia sumaria Neomed*. Añadieron, que contrario a lo establecido por AIG, la póliza a favor de Neomed sí cubría daños por difamación.

---

[27] *Íd.* Anejo 16, pág. 243.
[28] Apéndice de *Petición de certiorari*, Anejo 17, págs. 589-607.
[29] Apéndice de *Petición de certiorari*, Anejo 20, págs. 845-1317; Apéndice de *Petición de certiorari*, Anejo 21, págs. 1318-1323.

Por lo que, plantearon que las exclusiones de la póliza invocadas por AIG constituían una "manera tácita de admitir que Neomed incurrió en un acto ilícito al hacer uso de la imagen de la Dra. Paredes y a tales fines [AIG] no le están dando cubierta [.]"[30] Además, alegaron que el hecho de que Neomed no se opuso a la solicitud de sentencia sumaria presentada por AIG debía tomarse como que aceptaban que la Carta de Despido contenía material difamatorio. Por último, solicitaron que no se acogiera la solicitud de sentencia sumaria parcial, y que AIG permaneciera en el caso para que respondiera cuando aplicara la cubierta de la póliza.

No obstante lo anterior, el 7 de diciembre de 2023, los recurridos presentaron su propia *Moción sentencia sumaria parcial.*[31] En esta expusieron que procedía se dictara sentencia sumaria parcial en cuanto a la causa de acción por despido injustificado. Basaron su postura en que Neomed no pudo establecer evidencia que demostrara que la doctora Paredes Oliveras ejerció un patrón de conducta que mereciera una sanción tan drástica como el despido, ni que hubiese amonestación escrita alguna previo al 12 de enero de 2021.[32] Argumentaron que Neomed no siguió lo establecido en su reglamento, el cual requería que hubiese disciplina progresiva con relación al evento que motivó la queja. Señalaron pues, que conforme a las políticas de Neomed, correspondía que se hubiese impuesto una amonestación verbal, escrita o una suspensión, pero no el despido. Dado lo anterior, solicitaron al foro de instancia que dictara sentencia sumaria en cuanto a que el despido fue injustificado.

El 19 diciembre de 2023, Neomed y la enfermera Rivera presentaron su *Oposición a moción de sentencia sumaria parcial.*[33] En esencia, controvirtieron los hechos sobre los cuales los recurridos

---

[30] *Íd.* Anejo 21, pág.1323.
[31] Apéndice de *Petición de certiorari,* Anejo 22, págs. 1324-1754.
[32] *Íd.* Anejo 22, págs. 1331-1332 y 1334.
[33] Apéndice de *Petición de certiorari,* Anejo 23, págs. 1755-1832.

alegaron no existía controversia. Además, arguyeron que los recurridos no cumplieron en algunas instancias con la Regla 36.3 (a) (4) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, pues no incluyeron una indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia en donde se establecieran los hechos propuestos.

Con respecto al despido de la doctora Paredes Oliveras, recalcaron que se debió al uso continuo de voz alta e irrespetuosa en su comunicación con las enfermeras y compañeros de trabajo. Argumentaron que era obligación de Neomed como patrono proteger a sus empleados de conductas nocivas y lesivas a su dignidad e intimidad. Por lo que, solicitaron al tribunal de instancia que denegara la moción de sentencia sumaria presentada por los recurridos y desestimara la totalidad de la demanda.

De igual modo, AIG presentó el 16 de enero de 2024, su *Oposición a moción de sentencia sumaria parcial presentada por la parte demandante.*[34] En esta, acogió los fundamentos de derecho esbozados por Neomed y controvirtió los hechos sobre los cuales los recurridos alegaron no existía controversia. Alegó que conforme la evidencia presentada, Neomed no despidió a la recurrida-demandante de forma caprichosa, sino que estuvo justificada en el buen funcionamiento de su departamento de pediatría. Por lo que, solicitó al foro de instancia que denegara la solicitud de sentencia sumaria parcial presentada por los recurridos y dictara sentencia sumaria parcial desestimando la reclamación sobre despido injustificado en contra suya y de Neomed.

Acto seguido, el 24 de enero de 2024, Neomed y la enfermera Rivera presentaron *Réplica a oposición moción sentencia sumaria Neomed.*[35] En esta, en esencia, controvirtieron los hechos que los

---

[34] Apéndice de *Petición de certiorari*, Anejo 24, págs. 1833-1903.
[35] Apéndice de *Petición de certiorari*, Anejo 25, págs. 1904-1969.

recurridos identificaron como incontrovertidos. Adujeron que la reclamación de difamación era improcedente porque no se cumplió con el requisito de publicidad. Esto pues los recurridos no probaron que se divulgó a terceras personas información sobre el despido de la doctora Paredes Oliveras. En consecuencia, solicitaron al tribunal que declarara "ha lugar" la *Solicitud de sentencia sumaria* que habían presentado previamente -Neomed y la enfermera Rivera-.

Del mismo modo, AIG sometió el 26 de enero de 2024 una *Réplica a Oposición de Demandantes a Solicitud de Sentencia Sumaria Parcial Presentada por AIG.*[36] En esta discutió las "disposiciones de la póliza [de seguro de Neomed] y las exclusiones aplicables a las reclamaciones por uso no autorizado de la imagen, difamación y angustias mentales [.]"[37] Argumentó que la póliza no incluía cubierta por daños al amparo de la Ley de la Propia Imagen, por difamación, ni por angustias mentales a raíz del despido. Sin embargo, afirmó que la causa de acción por despido injustificado sí está cubierta por la póliza. En vista de lo anterior, AIG solicitó al TPI que declarara con lugar la solicitud de sentencia sumaria parcial presentada por sí, y que dictara sentencia parcial, de conformidad con lo solicitado.

Consecuentemente, el 27 de febrero de 2024, los recurridos presentaron una *Dúplica a réplica de moción sentencia sumaria Neomed.*[38] En esta plantearon -entre otros- que Neomed en su moción de sentencia sumaria incluyó un Reglamento de Recursos Humanos que no aplicaba al presente caso, pues dicho reglamento entró en vigor luego de haber ocurrido los hechos del presente caso.[39] Dicha distinción se debió a que el reglamento nuevo cambiaba la sanción de disciplina progresiva a despido inmediato. En cuanto al derecho de imagen, argumentaron que la Dra. Paredes Oliveras "nunca tuvo

---

[36] Apéndice de *Petición de certiorari,* Anejo 26, págs. 1970-1978.
[37] *Íd.* Anejo 26, págs. 1972.
[38] Apéndice de *Petición de certiorari,* Anejo 27, págs. 1979-1987.
[39] *Íd.* Anejo 27, pág. 1980.

la intención de dar un permiso perpetuo a Neomed para el uso de su foto máxime luego de que fue despedida."[40] Además, señalaron que el relevo no establecía que la autorización era indefinida. Por antes expuesto, solicitaron se dictara sentencia sumaria a su favor.

Finalmente, el 29 de febrero de 2024, los recurridos sometieron una *Réplica a oposición de moción sentencia sumaria*.[41] En síntesis argumentaron que Neomed no cumplió con la Regla 36.3 (4) de Sentencia Sumaria y que fue temerario en sus respuestas. Razón por la cual, solicitaron se dictara sentencia sumaria a su favor.

Así las cosas, el 21 de noviembre de 2024, el foro de instancia emitió una Resolución, en la cual denegó las solicitudes de sentencia sumaria presentadas por las partes y ordenó la continuación de los procedimientos. Ello por entender que existía controversia sustancial de hechos medulares a ser dirimidas en un juicio plenario.

El TPI determinó que los siguientes hechos no estaban en controversia:

> *Hechos establecidos por la parte demandada NEOMED y Carmen Rivera*
>
> *1. Los demandantes Dra. Paredes y José Soto Rodríguez están casados entre sí y tienen constituida una Sociedad Legal de Gananciales.*
>
> *2. La codemandante Dra. Paredes es médico de profesión, con especialidad en Pediatría.*
>
> *3. NEOMED es una corporación sin fines de lucro organizada conforme a las leyes de Puerto Rico, cuyo fin es proveer servicios de salud, principalmente a pacientes indigentes asegurados en el plan de salud Vital.*
>
> *4. NEOMED contrató el 30 de abril de 2013 a la Dra. Paredes para trabajar, en calidad de contratista, como pediatra en el centro de salud que opera en el municipio de Trujillo Alto.*
>
> *5. El 17 de agosto de 2015 NEOMED contrató a la Dra. Paredes como empleada regular para continuar trabajando como pediatra en el centro de salud del Municipio de Trujillo Alto.*
>
> *6. El 17 de agosto de 2015 la Dra. Paredes recibió una copia del Manual del Empleado y el Código de Conducta.*
>
> *7. Además, la Dra. Paredes tuvo acceso electrónico del Manual del Empleado de NEOMED desde el 17 de agosto de 2015.*

---

[40] *Íd.* Anejo 27, pág. 1986.
[41] Apéndice de *Petición de certiorari*, Anejo 28, págs. 1988-2002.

*8. La codemandada Carmen Rivera comenzó a trabajar como enfermera en el Departamento de Pediatría de NEOMED el 1 de abril de 2013.*

*9. Le enferma Carmen Rivera tiene una condición auditiva para lo cual le recetaron unos audífonos.*

*10. La enfermera Carmen Rivera no utilizaba los audífonos que le recetaron pues le causan mareos y dolor de cabeza, y "le tenía terror".*

*11. La Oficina de Recursos Humanos de NEOMED no le ha requerido a la enfermera Carmen Rivera que utilice los audífonos recetados.*

*12. La Oficina de Recursos Humanos no ha recibido quejas de parte de pacientes o médicos por problemas con el trabajo de la enfermera Carmen Rivera por no utilizar los audífonos.*

*13. El 17 de mayo de 2018 la Dra. Paredes firmó el documento "Relevo del empleado Neomed TV", en el cual autorizó el uso de su nombre y fotografía sin derecho a ninguna compensación monetaria.*

*14. Para la fecha de los hechos alegados en la "Segunda Demanda Enmendada" las enfermeras Leiram Santiago, la demandada Carmen Rivera y la Dra. Silma Martínez trabajaban en el área de Pediatría.*

*15. El 14 de enero de 2021 se celebró una reunión con la Dra. Paredes, Jonathan Meléndez y Lucy Pérez para dialogar sobre la queja presentada por la enfermera Leiram Santiago en contra de la doctora.*

*16. En la reunión de 14 de enero de 2021 se le entregó, y la doctora Paredes firmó, el escrito titulado "Forma en el Asesoramiento en el Desarrollo/Comportamiento" en el cual se relataba los motivos de la querella de la enfermera Santiago.*

*17. El 21 de enero de 2021 la Dra. Paredes participó en una reunión en donde estuvieron las enfermeras Leiram Santiago y Carmen Rivera, Lucy Pérez, Dra. Silma Martínez y Jonathan Meléndez de Recurso Humanos.*

*18. El 25 de enero de 2021 personal de NEOMED se reunió con la Dra. Paredes para dejarle saber que había una investigación en su contra por haber discriminado contra un empleado.*

*19. En la mencionada reunión de 25 de enero, a la Dra. Paredes se le informó que como parte de la investigación se entrevistarían varios empleados.*

*20. El 5 de febrero de 2021 se reunieron con la Dra. Paredes, Alexis Maisonet y el licenciado Víctor Rivera.*

*21. En esa reunión de 5 de febrero de 2021, se le entregó a la Dra. Paredes una carta de despido fechada ese mismo día.*

*22. En esa reunión de 5 de febrero, le leyeron la carta de despido completa antes de entregársela.*

*23. La Dra. Paredes firmó la carta de despido que le entregaron el 5 de febrero de 2021.*

*24. La Dra. Paredes no contestó los señalamientos contenidos en la carta de despido luego de que se la entregaron.*

25. En la carta de despido se expresaron las razones para el despido de la Dra. Paredes.

*Hechos establecidos por la parte demandada AIG*

26. AIG emitió la póliza Director and Officers Not for profit, número 025- 001003532-05 a favor de NEOMED. La misma es una póliza tipo "claims made" con vigencia del 8 de abril de 2021. La cual incluye una cubierta de Employment Practices Liability (EPL) Insurance con límites de $500,000.00 por reclamación (incluyendo cotos de defensa) y $1,000,000.00 por todas las reclamaciones de EPL y discriminación no laboral según dichos términos son definidos en la póliza. La cubierta por Employment Practice Liability tiene un deducible de $35,000.00.

27. El contrato de seguro dispone en lo pertinente: que la póliza deberá pagar por la Asegurada "pérdidas" que surjan durante el periodo de la póliza o periodo de la póliza o periodo de divulgación (si aplica) y notificado a la aseguradora conforme a los términos de esta póliza por cualquier "Acto ilícito", de facto o alegado, de la Aseguradora. La aseguradora deberá, de acuerdo con y sujeto a lo establecido en la Cláusula 8, adelantar el pago de los costos de defensa de dicho reclamo antes de su disposición final.

28. El término "reclamación" es definido en la póliza para incluir una demanda de un remedio monetario por escrito. El término reclamación incluye una reclamación de práctica laboral.

29. Por su parte, una reclamación de práctica laboral significa una reclamación en donde se alega una violación de las prácticas laborales.

30. El término de "violación de las prácticas laborales" significa cualquier alegado o actual: 1) despido o terminación del empleo injusto (bien sea real o constructivo); … 6) libelo, calumnia, difamación o invasión de la privacidad relacionada al empleo… 9) disciplina indebida… pero sólo si la violación de práctica laboral, bien sea directa, indirecta, intencional o no intencional, se relaciona con un individuo asegurado, o solicitante de empleo, con la Asegurada o una Entidad Externa.

31. Un "Acto ilícito" incluye una reclamación de práctica laboral.

32. Finalmente, la Cláusula 4 sobre exclusiones provee como sigue:

> "La aseguradora no será responsable de hacer pagos por cualquier Perdida en conexión con una reclamación en contra del asegurado: a) que surja, se base en o sea atribuible a la obtención de hecho de cualquier beneficio o ventaja a la cual no tenga derecho el asegurado legalmente. […] h) por cualquier lesión corporal, enfermedad, dolencia, muerte o angustia emocional real o alegada de cualquier persona, o por daño o destrucción de cualquier propiedad tangible, incluida la pérdida de uso de la misma, o por la publicación, oral o escrita, de libelo o calumnia o de otra material difamatorio o despectivo o de materiales que violentan el derecho de una persona a la privacidad. […]"

*Hechos establecidos por la parte demandante Dra. Paredes y su esposo*

*33. El Sr. Jonathan Meléndez declaró que nunca vio querella o queja escrita presentada contra la Dra. Paredes por la enfermera Carmen Rivera.*

*34. El Lcdo. Víctor Rivera Torres era un investigador externo.*

*35. A La enfermera Carmen Rivera le recetaron audífonos en el año 2016, pero no los usa y no había vuelto a evaluarse.*

*36. Nunca le notificó a NEOMED de problema de audición.*

*37. La enfermera Carmen Rivera entendía que era importante notificar a NEOMED sobre su discapacidad auditiva, pero no lo hizo.*

*38. En el Departamento de Recursos Humanos de NEOMED no existía evidencia de fecha en que ocurrió el alegado comentario de la Dra. Paredes.*

*39. El Departamento de Recursos Humanos, al concluir las entrevistas de la investigación de 25 de enero de 2021, dejó en manos de la asesoría legal el aspecto de credibilidad sobre lo ocurrido.*

*40. El Departamento de Recursos Humanos no preparó la Carta de Despido.*

*41. La Carta de Despido la preparó el Lcdo. Víctor Rivera Torres.*

*42. La Dra. Rosa Castro no redactó la Carta de Despido y desconoce si hubo borradores de la Carta.*

*43. A la Dra. Rosa Castro no se le hizo entrega de ningún documento relacionado a la investigación antes de que le hicieran entrega de la carta de despido para su firma.*

Asimismo, el TPI entendió que los siguientes hechos estaban controvertidos:

*1. Detalles del incidente alegado por la enfermera Carmen Rivera.*

*2. Existencia y detalles sobre otros incidentes previos, si alguno.*

*3. Si ocurrieron incidentes delante de pacientes.*

*4. Temas discutidos entre la Administración de NEOMED, personal y la Dra. Paredes en las reuniones que sostuvieron por los incidentes alegados.*

*5. Procedimiento establecido en NEOMED para investigar y tramitar quejas de empleados.*

*6. Quejas verbales o escritas que se hubiesen presentado en contra de la Dra. Paredes. De existir alguna, razón por la cual fue presentada y ante quién se presentó.*

*7. Si la Dra. Paredes fue amonestada por alguno de los incidentes alegados previo a su despido.*

*8. Procedimiento seguido por la administración de NEOMED dirigido hacia el despido de la Dra. Paredes.*

*9. Expresiones hechas por NEOMED a terceros con relación a los hechos y sobre la Dra. Paredes.*

*10. En cuanto a la publicidad utilizada por NEOMED, fecha en que tomaron fotografía y fecha de publicaciones.*

*11. Uso de la imagen de la Dra. Paredes pese a que ésta ya no trabajaba en dicha institución.*

*12. Alcance del "Relevo del Empleado para NEOMED TV".*

*13. Extensión y alcance de la póliza Núm. 025-001003532-05, expedida por AIG a favor de NEOMED.*

Inconformes con la determinación del tribunal de instancia, el 18 de diciembre de 2024, Neomed, la enfermera Rivera y AIG Insurance Company Puerto Rico presentaron una *Petición de Certiorari*, en la cual solicitaron se revocara la Resolución dictada por el TPI el 20 de noviembre de 2024.

Señalaron que el foro de instancia cometió los siguientes errores:

*A. Erró el tribunal de instancia al no incluir como hechos incontrovertibles en la Resolución dictada el 21 de noviembre de 2024 eventos materiales que fueron admitidos por los demandantes y que son esenciales para resolver la Solicitud de sentencia sumaria presentada por NEOMED y la enfermera Rivera.*

*B. Erró el tribunal de instancia al no dictar sentencia sumaria y resolver, por ser incontrovertible, que la codemandante doctora Paredes carece de legitimación activa para instar una acción al amparo de la Ley del Derecho sobre la Propia Imagen, Ley Núm. 139-2011, pues no explota su imagen como medio de trabajo o ganarse la vida.*

*C. Erró el tribunal de instancia al no dictar sentencia sumaria y resolver que, ante los hechos incontrovertibles, la codemandada NEOMED carece de legitimación pasiva para ser demandada al amparo de la Ley del Derecho sobre la Propia Imagen, Ley Núm. 139-2011 pues la publicidad que realizó se hizo con un interés público legítimo y no con una finalidad comercial o con ánimo de lucro.*

*D. Erró el foro primario al denegar la solicitud de sentencia sumaria presentada por NEOMED, en lo relativo a la reclamación de violación del derecho sobre la propia imagen, ya que es incontrovertible que la doctora Paredes había autorizado el uso del arte publicitario con la firma del documento "Relevo del empleado Neomed TV".*

*E. Erró el foro primario al no desestimar mediante sentencia sumaria la reclamación de despido injustificado, por cuanto los hechos incontrovertibles materiales demuestran que la cesantía de la doctora Paredes se debió a que, de forma continua y reiterada, utilizaba una forma y tono vociferante, irrespetuoso, disruptivo, abusivo e intimidante cuando se comunicaba con sus compañeros de labores por lo que su despido no fue un mero capricho de NEOMED.*

*F. Erró el tribunal de instancia al, como cuestión de derecho, no desestimar la reclamación de daños del codemandante José Soto Rodríguez, pues el remedio que concede la Ley Núm. 80-1976 es exclusivo tanto en lo concerniente a la compensación a que tiene derecho el empleado despedido injustificadamente como a la persona con derecho a recibirla, por lo que es improcedente una acción contingente de daños del cónyuge.*

*G. Erró el Tribunal de Primera Instancia al no dictar sentencia sumaria y desestimar la acción de despido injustificado de la codemandante doctora Paredes, pues como cuestión de derecho NEOMED está cobijada por la inmunidad que confiere Ley para Prohibir y Prevenir el Acoso Laboral, cuando un patrono toma una decisión de empleo para prevenir y evitar acoso laboral en los centros de trabajo.*

*H. Erró el foro primario al no dictar sentencia sumaria y no desestimar la acción de difamación por cuanto los hechos incontrovertibles demuestran que las expresiones de la carta de despido y otros documentos y manifestaciones hechas en los procesos de personal son comunicaciones privilegiadas que gozan de inmunidad.*

*I. Erró el foro primario al resolver mediante sentencia sumaria que la parte demandante carece de prueba para demostrar el requisito de publicidad de una acción de difamación, pues los demandantes carecen de prueba para probar que NEOMED o Carmen Rivera han comunicado a terceras personas las razones del despido de la doctora Paredes.*

*J. Erró el foro primario al no resolver la Solicitud de Sentencia Sumaria Parcial de AIG considerando que todos los hechos no controvertidos contenido en esta no fueron controvertidos por los demandantes.*

En cuanto al derecho sobre la Propia Imagen, alegaron que para que dicha causa de acción prosperara, los recurridos tenían que probar que la publicación de la imagen de la doctora Paredes Oliveras "[i]mplicó una pérdida monetaria, pues es una persona que comercializa su imagen con fines económicos."[42] Señalaron, además, que los recurridos debían demostrar que Neomed usó su imagen con un propósito comercial y lucro.

Argumentaron que "a Neomed no se le puede reclamar bajo la Ley del derecho sobre la Propia Imagen, pues carece de legitimación pasiva."[43] Ello porque son una corporación sin fines de lucro, que atiende a pacientes médicos indigentes, participantes del Plan de Salud y porque los anuncios publicitarios se hacen con un fin público legítimo y no con un propósito comercial o con ánimos de lucro.

---

[42] *Petición de certiorari*, pág. 12.
[43] *Íd.*, pág. 13.

Además, recalcaron que la doctora Paredes Oliveras autorizó a Neomed a utilizar su imagen cuando firmó el 17 de mayo de 2018 el documento "Relevo del empleado Neomed TV". Pues mediante este facultó a Neomed a utilizar su nombre o imagen sin derecho a "ninguna compensación monetaria".[44]

Sobre el alegado despido injustificado, los peticionarios adujeron que no se llevó a cabo por mero capricho patronal. "Por el contrario, fue un despido relacionado con el buen y normal funcionamiento de las operaciones de Neomed luego de una investigación."[45] Ello pues, "la doctora Paredes desatendió la invitación de cambio, continuó vociferando e incurrió en un acoso laboral cuando atentó contra la dignidad de la enfermera Rivera al gritarle que "si estaba sorda se pusiera sus audífonos."[46]

Añadieron que, el remedio exclusivo que provee la Ley 80, *supra*, es la mesada, la cual solo puede ser reclamada por el empleado que es despedido sin justa causa. Por lo que, señalaron eran improcedentes las reclamaciones de daños de la doctora Paredes y su esposo.

En lo que se refiere a la causa de acción por difamación, los peticionarios resaltaron que, según los recurridos, "[e]l contenido de la carta de despido de la doctora Paredes son las expresiones difamatorias sobre su persona, como también lo que se dijo durante el proceso de investigación y despido."[47] Los peticionarios argumentaron, que lo contenido en la carta de despido eran comunicaciones privilegiadas que no servían como fundamento para una reclamación de difamación. Además, alegaron que los recurridos carecían de prueba que demostrase que Neomed comunicó a terceras

---

[44] *Íd.*
[45] *Íd.*, pág. 18.
[46] *Íd.*
[47] *Íd.*, pág. 22.

personas las alegadas expresiones difamatorias. Por lo que, alegaron no se cumplió con el requisito indispensable de publicidad.

Así las cosas, el 27 de enero de 2025, los recurridos presentaron su *Oposición a certiorari*.[48] Mediante esta, solicitaron que denegáramos la expedición del certiorari presentado. Ello pues, (1) los peticionarios no pusieron a este Tribunal de Apelaciones en posición de intervenir con la discreción del tribunal de instancia; (2) había controversia de hechos materiales en cuanto al despido de la doctora Paredes Oliveras, a ser dirimidos en un juicio plenario; (3) existían versiones encontradas en cuanto a si ésta fue orientada sobre el uso de su imagen antes y después de su despedido.

En cuanto al derecho de imagen, los recurridos señalaron que la doctora Paredes Oliveras reclamó que Neomed hizo un uso ilícito de su imagen, actuando bajo negligencia crasa. Siendo esto, según los recurridos, un mensaje claro que se revocaba cualquier autorización previa.[49] Alegaron que el usar la imagen de la Dra. Paredes Oliveras constituyó una violación a su dignidad.

Con relación al despido, los recurridos alegan que fue injustificado, pues Neomed no pudo probar en instancia que existiera un patrón de conducta de la doctora Paredes Oliveras, merecedora de una sanción tan drástica como el despido.[50] Señalan que la evidencia estableció que Neomed no cumplió con su programa de disciplina progresiva establecido en el reglamento de Recursos Humanos.

Lo que se refiere a los daños reclamados por el señor Soto Rodríguez, los recurridos alegan que no le asiste la razón a los peticionarios al solicitar que se desestime la causa de acción. Ello pues, alegan que "si con el despido concurren otras actuaciones

---

[48] El 2 de enero de 2025, los recurridos presentaron una *Moción urgente de prórroga* en la cual solicitaron una prórroga de 20 días a partir de 8 de enero de 2025. Este Tribunal de Apelaciones declaró, el 7 de enero de 2025, *Con lugar* la moción en solicitud de prórroga.

[49] *Alegato en oposición a certiorari*, pág. 13.

[50] *Íd.* pág. 16.

torticeras, que sean independientes al mismo, entonces procede que se responsabilice al patrono a base de dicha conducta."[51]

En lo relacionado a la *Ley Para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, supra, adujeron que "no existe evidencia de que Carmen Rivera -enfermera- hubiera presentado Querella o Queja de acoso laboral contra la recurrida doctora Paredes."[52]

En lo que respecta a la reclamación por difamación, los recurridos alegan que "el Lcdo. Víctor Rivera Torres, quien no es Empleado de Neomed Center Corp., no sólo preparó la carta de despido, sino que estuvo presente en la reunión del despido y fue quien dirigió la misma."[53] Por lo cual, los recurridos señalaron que el Lcdo. Víctor Rivera Torres y su Bufete, para fines del caso de epígrafe, son una Tercera Persona.

En atención a los errores señalados, procedemos a exponer la normativa jurídica aplicable a este recurso.

## II.

### A. Certiorari

El *certiorari* es el vehículo procesal que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Mediante este recurso extraordinario se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez,*

---

[51] *Íd.* pág. 18.
[52] *Íd.* pág. 19.
[53] *Íd.* pág. 22.

*supra*, pág. 847. Contrario al recurso de apelación, el Tribunal de Apelaciones posee la facultad discrecional de expedir o denegar el recurso de *certiorari* toda vez que, de ordinario, se tratan de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente las instancias en las que este Tribunal ostenta autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. La referida Regla dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o a la denegación de una moción de carácter dispositivo. Véase Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1. A su vez, a modo de excepción, este tribunal podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, anotaciones de rebeldía, asuntos relativos a relaciones de familia, casos de interés público o cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El propósito de esta Regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486; *800 Ponce de León v. AIG, supra*, pág. 175; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la

expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra*.

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones, In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), establece los criterios que debemos considerar en el ejercicio discrecional de atender una petición de *certiorari*. A saber, este Tribunal debe considerar:

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
>
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
>
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, 216 DPR ___(2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra; Banco Popular v. Posada*, 2024

TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021). En este sentido, "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009). Empero, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. *Ramos Pérez v. Univisión, supra*, pág. 219; *Birriel Colón v. Econo y otro, supra*, pág. 91. Véase también Regla 36.3 (e) de Procedimiento Civil, *supra*,

R. 36.3 (e). Así pues, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro, supra.*

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia sustancial. *SLG Fernández-Bernal v. RAD-MAN et al., supra,* págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c). Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Econo y otro, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

En *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo estableció la normativa que este Tribunal de Apelaciones debe observar al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que está llamado a realizar una revisión *de novo,* conforme con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo,* y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra,* pág. 116.

En segundo lugar, el Tribunal de Apelaciones debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan

con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra.*

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra.*

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.,* pág. 119.

### C. Despido injustificado

En términos generales, el despido es la ruptura unilateral que hace un patrono del contrato de trabajo celebrado con un empleado. *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001). Ahora bien, para efectos de la Ley Núm. 80, *supra,* se entenderá por despido lo siguiente:

> *[A]demás de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales, o la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra. Artículo 5 de la Ley Núm. 80, supra, sec. 185e.*

El Estado tiene un interés apremiante en regular las relaciones obrero-patronales con el fin de evitar prácticas injustas de trabajo e implementar una clara política pública de proteger los derechos de los empleados. *Íd.* Así, pues, la Ley Núm. 80, *supra,* tiene el propósito de desalentar los despidos injustificados y las actuaciones arbitrarias contra los empleados mediante la imposición de remedios económicos. *Ruiz Mattei v. Commercial Equip. Fin., Inc.,* 2024 TSPR 68; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). En dicha legislación se incorporó el estándar de justa causa como

limitación a todo despido. *Díaz v. Wyndham Hotel Corp., supra,* págs. 374-375. Es decir, no existe una prohibición absoluta en contra del despido, ya que el patrono puede plantear la defensa de justa causa. *Íd.*; *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 549 (2021); *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 651 (2014). A tenor con el Artículo 2 de la Ley Núm. 80, *supra,* sec. 185b, los criterios que constituyen justa causa para el despido son los siguientes:

> *Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:*
>
> *(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.*
>
> *(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.*
>
> *(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.*
>
> *(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.*
>
> *(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.*
>
> *(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.*
>
> *No se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del*

*despido hasta que un tribunal ordene la reposición en el empleo.*

En tal sentido, el Artículo 1 de la Ley Núm. 80, *supra*, sec. 185a, establece que todo empleado que trabaje mediante remuneración, contratado sin tiempo determinado y que fuere despedido sin que haya mediado justa causa tendrá derecho a recibir una indemnización o mesada por el tiempo trabajado para el patrono. *Ortiz Ortiz v. Medtronic, supra*, pág. 771; *Rodríguez Gómez v. Multinational Ins., supra*, págs. 549-550.

### D. Difamación

Las acciones de difamación plantean la necesidad de balancear el derecho a la libre expresión y la libertad de prensa, que comprende el interés del Pueblo en fomentar el debate vigoroso sobre cuestiones de interés público, y el derecho a la intimidad de los individuos. *Gómez Márquez v. Periódico El Oriental, Inc.*, 203 DPR 783, 795 (2020), citando a *Maldonado y Negrón v. Marrero y Blanco*, 121 DPR 705, 713 (1988); *González Martínez v. López*, 118 DPR 190, 192 (1987).

En nuestro ordenamiento jurídico, el Artículo 1536 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 10801, es la fuente de protección civil contra ataques difamatorios. *Cacho González v. Santarrosa*, 203 DPR 215, 227 (2019), citando a *Colón Pérez v. Televicentro*, 175 DPR 690, 726 (2009). La *Ley de Libelo y Calumnia* del 19 de febrero de 1902, 32 LPRA secs. 3141–3149, ha perdido gran parte de su importancia desde la aprobación de nuestra Constitución y subsiste tan solo en cuanto es compatible con ella. *Id.* En *Romany v. El Mundo, Inc.*, 89 DPR 604, 617–618 (1963), se reconoció una acción en daños y perjuicios por libelo al amparo del Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141, en

nuestra jurisdicción.[54] La justificación para ello fue que la Ley de 1902 exigía, como requisito indispensable y necesario para que se pudiera ejercitar la acción en daños y perjuicios por libelo, que la difamación fuera maliciosa, mientras que al amparo del Artículo 1802 del Código Civil, supra, era suficiente que la parte demandada hubiese actuado negligentemente. Así, cuando una parte no puede probar una causa de acción de libelo al amparo de la Ley de 1902, por ausencia del ingrediente de malicia, la persona perjudicada puede reclamar al amparo del Artículo 1536 del Código Civil, supra, siempre que haya mediado culpa o negligencia de la parte demandada y estuvieran presentes los demás elementos indispensables de esta causa de acción. *Colón Pérez v. Televicentro P.R.,* 175 DPR 690, 702 (2009).

La difamación ha sido definida como la expresión falsa que constituye un ataque al honor, dignidad y reputación de una persona. Una expresión difamatoria puede ocurrir mediante el libelo o la calumnia. El libelo se conoce como la difamación maliciosa que se realiza contra una persona por cualquier medio escrito de comunicación, que tienda a exponerle a ser desacreditada, deshonrada o menospreciada. 32 LPRA sec. 3142. La calumnia, por su parte, trata de una expresión difamatoria oral. 32 LPRA sec. 3143; *Ojeda v. El Vocero de PR,* 137 DPR 315 (1994).

En una acción por difamación, el objeto de derecho es la reputación personal del sujeto injuriado públicamente, o sea, se trata del derecho de este último a defender su nombre ante los ojos de los demás, en el interés de: (1) proteger las relaciones que sostiene con terceros; (2) proteger la probabilidad de relaciones futuras con terceros; (3) proteger su imagen pública en general, y (4) evitar que se le cree una imagen pública negativa si careciere de

---

[54] El Art. 1802 del Código Civil (1930) derogado es el equivalente al Art. 1536 del Código Civil (2020) vigente.

reconocimiento público en el presente. *Soc. de Gananciales v. Vocero de P.R.*, 135 DPR 122, 126–127 (1994). Cuando quien comparece en una causa de acción por difamación es una persona privada, sólo es necesario que se demuestre negligencia. *José v. El Mundo*, 106 DPR 415 (1977).

Para que prospere una causa de acción por difamación tienen que probarse, en su totalidad, los siguientes requisitos: (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha **publicación** [énfasis suplido]; (3) si se trata de una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente; y por el contrario, (4) si se trata de una figura pública, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no. *Garib Bazain v. Clavell*, 135 DPR 475, 482 (1994).

La negligencia se define como la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Colón Pérez v. Televicentro P.R., supra*; *Ramos v. Carlo*, 85 DPR 353, 358 (1962).

Los criterios que debe utilizar un tribunal para determinar, en una acción específica de difamación, si la persona demandada incurrió en negligencia al hacer la publicación alegadamente libelosa son: (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la información, lo cual se determina tomando en consideración el costo en términos de dinero, tiempo, personal, la urgencia de la publicación, el carácter de la

noticia y cualquier otro factor pertinente. *Gómez Márquez v. Periódico el Oriental Inc.*, 203 DPR 783, 806 (2020); *Colón Pérez v. Televicentro P.R.*, supra, a la pág. 708, citando a *Torres Silva v. El Mundo, Inc.*, supra.

### E. Derecho sobre la Propia Imagen

Se considera imagen la proyección o representación de la figura humana mediante cualquier procedimiento o técnica de reproducción. *Vigoreaux Lorenzana v. Quizno's Sub*, 173 DPR 254, 263 (2008). La imagen propia constituye un atributo fundamental con el cual se individualiza socialmente a la persona; es decir, es parte de la identidad personal. *López Tristani v. Maldonado*, supra, a la pág. 851. Nuestro ordenamiento jurídico reconoce el derecho a la propia imagen como una modalidad del derecho a la intimidad. *López Tristani v. Maldonado*, 168 DPR 838, 850 (2006), citando a *Colón v. Romero Barceló* 112 DPR 573 (1982).

En *Bonilla Medina v. PNP*, 140 DPR 294, 311 (1996) el Tribunal Supremo estableció que toda persona tiene derecho a controlar dónde, cuándo y cómo se le toma una fotografía o se reproduce de cualquier forma su imagen, así como a **oponerse a que se reproduzca su imagen por personas a quienes no ha concedido autorización expresa o tácita** [énfasis suplido]. *Vigoreaux Lorenzana v. Quizno's Sub*, supra, a la pág. 263. "[L]a utilización no autorizada de la imagen de una persona para propósitos comerciales, sin su remuneración o consentimiento, generalmente da lugar a una causa de acción en daños por violación al derecho a la publicidad de la persona afectada." *Vigoreaux Lorenzana v. Quizno's Sub*, supra, a la pág. 267.

En síntesis, "[e]l derecho a la intimidad incluye una causa de acción contra todo aquel que **se apropia indebidamente** [énfasis suplido] del nombre, de la imagen o del parecido de una persona para propósitos lucrativos o comerciales." *Vigoreaux Lorenzana v. Quizno's*

*Sub*, supra, a la pág. 268, citando a *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 US 562 (1977). Así fue incorporado en el Art. 3 de la *Ley del Derecho sobre la Propia Imagen* del 13 de julio de 2011 (Ley Núm. 139-2011), según enmendada, 32 LPRA sec. 3152, el cual establece que:

> cualquier persona natural o jurídica que utilice la imagen de otra persona con fines o propósitos comerciales, mercantiles o publicitarios, sin el consentimiento previo de ésta, de la persona que posea una licencia sobre tal imagen, de los herederos en caso de haber fallecido o del agente autorizado de uno de éstos, responderá por los daños causados.

### III.

En el presente caso, los peticionarios plantearon que erró el TPI (1) al denegar su solicitud de sentencia sumaria; (2) al no resolver que la doctora Paredes Oliveras concedió autorización para el uso de su imagen; y (3) al no desestimar las causas de acción sobre: despido injustificado, difamación y daños reclamados por el señor Soto Rodríguez.

Como cuestión de umbral, nos corresponde revisar de *novo* tanto la solicitud de sentencia sumaria presentada por Neomed, la enfermera Rivera y AIG, como la oposición presentada por la doctora. Paredes Oliveras, el señor Soto Rodríguez y la Sociedad Legal de Gananciales compuesta por ambos, y evaluar la prueba documental que se presentó ante el TPI. En tal ejercicio, concluimos que ambas partes cumplieron con la Regla 36 de Procedimiento Civil, *supra*, en término de los requisitos de forma de sus escritos.

Tras una sosegada evaluación de los planteamientos esbozados por los peticionarios en su solicitud de sentencia sumaria, así como la oposición de los recurridos, determinamos que les asiste la razón a los peticionarios en cuanto a la causa de acción por difamación y derecho de imagen.

En esencia, para que una acción por difamación prospere tiene que cumplirse con los siguientes requisitos: (1) haber una expresión

falsa; (2) que produce un daño real; (3) nexo causal entre la expresión y el daño producido; y (4) la expresión fue publicada. En el caso ante nos, se indicó que la enfermera Rivera alegó que la doctora Paredes Oliveras le gritó que "si estaba sorda, se pusiera sus audífonos", expresión que la Dra. Paredes Oliveras alega es falsa. De una extensa evaluación del expediente, determinamos que no se configuró una causa de acción por difamación. Ello pues, aun cuando la expresión fuese falsa, los recurridos no probaron que dicha expresión fue difundida o publicada. De la documentación considerada, se desprende únicamente que la misma fue plasmada en un documento interno del centro de trabajo, por lo que, al no cumplirse con dicho requisito, no hay un daño real bajo la causal de difamación que amerite indemnización alguna.

En lo pertinente al derecho sobre la Propia Imagen, se configura una violación a este, cuando ocurre una apropiación indebida o un uso no autorizado de la imagen de una persona para propósitos lucrativos o comerciales. En este caso, los recurridos alegan que posterior al despido de la doctora Paredes Oliveras, Neomed colocó la imagen de la recurrida-demandante en anuncios publicitarios, lo cual aducen constituyó un uso no autorizado de su imagen. Sin embargo, conforme fue evidenciado por los peticionarios, dicho uso fue conforme al "Relevo del Empleado para Neomed TV" que la Dra. Paredes Oliveras firmó el 17 de mayo de 2018. En este la Dra. Paredes Oliveras consintió, entre otros, a que Neomed utilizara su nombre o imagen con un propósito educativo, promocional o publicitario y a que no habría restricciones en las veces que se utilizara su imagen o nombre. Además, según establecido por las partes, Neomed cesó de usar la imagen de la doctora Paredes Oliveras. Considerando la autorización expresa obtenida por Neomed en el "relevo", somos del criterio de que no hubo una violación al derecho de imagen.

Sin embargo, no le asiste la razón a los peticionarios en cuanto a que procedía que se dictara sentencia sumaria con relación a la reclamación del despido injustificado. Tras un minucioso análisis de la normativa relevante y los hechos particulares del caso, se desprende que, tal y como lo determinó el TPI, aún existen controversias de hechos materiales a ser dirimidos en un juicio plenario.

Por todo lo anterior, determinamos que erró el Foro Primario al no dictar sentencia sumaria parcial en cuanto a la causa de acción por difamación y de derecho sobre la propia imagen. Así las cosas, corresponde expedir el auto de *certiorari*, a fines de desestimar las referidas causas de acción, y devolver el caso al Tribunal de Primera Instancia para la continuación de los procedimientos en cuanto a la causa de acción por despido injustificado.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se desestiman las causas de acción por difamación y el derecho de imagen. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos a fin de que se dilucide en los méritos las causas relativas al alegado despido injustificado de la recurrida-demandante.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones